## MUMM v. RATH PACKING CO.
### No. 9.

District Court, N. D. Iowa, E. D.

May 3, 1940.

Shearer, Byard & Trogner, of Minneapolis, Minn., and Ralph Orwig, of Des Moines, Iowa, for plaintiff.

John E. Stryker, Jr., of St. Paul, Minn., and B. F. Swisher, of Waterloo, Iowa, for defendant.

SCOTT, District Judge.

This is a suit to enjoin infringement of letters patent Nos. 1,484,523, 1,699,076 and 1,837,280.

In No. 1,484,523 plaintiff elects to rely on claims 3 and 5. Claim 5 covers: "5. The process of producing seamless sausage casings of relatively small size from relatively large animal intestines, which consists in displacing the particles of the original intestine by longitudinal stretching and circumferential contraction, and in curing the same so as to maintain its changed dimensions, whereby the completed casing has greater length and less diameter than the original intestine from which it was made."

Claim 3 is for an article of manufacture produced under the process described in

claim 5, and must stand or fall with claim 5.

In No. 1,699,076 plaintiff elects to rely on claims 2, 3, 4, 7, 8, 13, and 14. Claims 2 and 3 and 13 and 14 are process claims, and claims 4, 7 and 8 are articles of manufacture claims, resting upon the process claims. For the purposes of this opinion the process claims only need be given analytical attention.

In No. 1,837,280 plaintiff elects to rely on claims 1, 5 and 8. Claims 5 and 8 are process claims and claim 1 is an article of manufacture claim, the infringement or validity of which depends upon the infringement or validity of the process claims.

■ I shall discuss the respective process claims in the order stated, dealing first with the question of infringement. First referring to claim 5 of patent No. 1,-484,523, it seems to me quite obvious that plaintiff has failed to establish infringement. I of course consider this question from the standpoint of the Patent Office conclusion, that is, I assume the patent to be valid. I think my findings Nos. 3 to 8, inclusive, are sustained by the evidence without substantial conflict. My findings Nos. 3 to 8, inclusive, are as follows:

"III. Defendant's process includes the steps of telescoping the intestines on wooden sticks, then drying them, then slitting the intestines longitudinally, removing them from the sticks, flattening two or more of them in overlapping relating to each other, sewing the side edges of the overlapping pieces together (in some cases after trimming the edges), then soaking the sewed casings in water until they are soft and the layers are readily separable, then turning them inside out (in some cases after separating the layers), then inspecting them for defects and finally packing them for shipment or use. In every case the defendant makes sausage casings of relatively large diameter by sewing together smaller intestines, after slitting them longitudinally. It does not materially stretch the individual intestines lengthwise or materially reduce their circumferences.

"IV. Defendant's soaking treatment subsequent to the drying on the sticks causes the intestines to return to substantially their original shape and loosens the layers so that they separate readily in the finished casing.

"V. Incidental to placing the intestines on sticks in defendant's process there may be slight longitudinal stretching and incidental to the drying some shrinkage occurs but this does not make the casings useful as small seamless substitutes for sheep intestines or accomplish the result sought by the alleged invention of patent No. 1,484,523.

"VI. Patent No. 1,484,523 prescribes curing and drying of the intestines while reduced to the form of a casing on a former. The sole treatment particularly pointed out in the patent for curing is treatment with smoke from combustion, liquid smoke, alkali and acids applied to the intestines while on the formers.

"VII. The defendant does not apply smoke, alkali, acids or other fumes to the intestines while on the sticks, nor does it tan them thereon.

"VIII. In defendant's process the intestines are always removed from the sticks by slitting the intestines longitudinally. This destroys any utility they might otherwise have as seamless casings. No other practical method for their removal from the sticks is suggested by the record herein."

Upon these findings I conclude that the defendant has not infringed claim No. 5, and as a corollary that defendant has not infringed claim No. 3.

■ Referring now to patent No. 1,699,-076, our first task of comparison and analysis respects claims 2 and 3. These claims are as follows:

"2. The process of producing animal casings of substantially constant diameter, which consists in taking animal intestines of irregular diameter, laterally stretching and expanding the smaller portions of said intestines to a predetermined diameter less than the maximum diameter of said intestines, in contracting or shrinking the larger portions of said intestines to the predetermined diameter, and in treating the intestines while held in its predetermined changed diameter, so as to give permanent set thereto."

"3. The process of producing animal casings of predetermined definite form, which consists in taking an animal intestine of irregular diameter, laterally stretching or expanding the smaller portions of said intestine, in contracting or shrinking the larger portions of said intestine, and in thereafter treating the intestine to give permanent set thereto."

It will be observed that claim 3 in a number of clauses expresses the thought in different language than claim 2. The ultimate

conclusion, however, is unavoidable that in each claim an identical series of acts are described, with the possible exception that in claim 2 the treating process is definitely required to occur, while the gut is on the stick, whereas in claim 3, that requirement is not expressed. Consideration of the whole testimony, however, makes it clear that the so-called treating must occur while the gut is on the stick, and always does. I, therefore, observe no material distinction between these two claims.

Claims 13 and 14 are as follows: "13. The process of producing animal casing of predetermined definite form, which consists in taking an animal intestine of irregular diameter, superimposing other layers of animal intestine thereon while in a tacky condition, stretching and contracting irregular portions of the multi-ply casing thus assembled to predetermined definite form, and tanning the same while held in its predetermined changed form so as to cause the plies to permanently adhere and to give permanent set to the casing."

"14. The process of producing straight line sausage casings from naturally curved animal intestines, which consists in placing the casing on a former to give definite form thereto, superimposing a strip of animal intestines longitudinally on the casing, and thereafter treating the casing to cause the plies of intestines to permanently adhere and merge."

Claims 4, 7 and 8 of Patent No. 1,699,076 are articles of manufacture claims and are as follows:

"4. As a new article of manufacture, an animal casing of predetermined form varying from the original form of the intestines from which it is formed, said casing having some of its parts displaced by a lateral expansion or stretching and other portions reduced in diameter by contraction, the said casing being treated to give same permanent character."

"7. As a new article of manufacture, a laminated animal casing made up of a plurality of layers of animal intestines or membrane having their entire surfaces in contact and merged together and cured."

"8. As a new article of manufacture, a laminated animal casing made up of a plurality of layers of animal intestines or membrane having their entire surfaces in contact and merged together."

I shall not discuss claims 4, 7 and 8 individually, as obviously they are no stronger than the process claims upon which they rest.

Referring now to the process claims of this patent, I call attention to certain statements of the specifications indicating how it is expected the plaintiff's alleged discovery is to be made useful. Line 60 to line 73, inclusive, contain two sentences on the subject referred to, as follows: "In this case, that portion of the intestine that is between the points marked b—c will, while the intestine is still on the former, be contracted or shrunk down to the diameter indicated by the lines 2—2, and this contraction, as stated, may be produced by immersing the intestine, while on the former, into a solution of alum, hydrochloric acid or other suitable astringent. Then, while the intestine is still on the former, it should be dried and cured, and this will preferably be accomplished by a smoking operation which, of course, involves artificial heat."

Referring now to the claims of this patent we find that two characteristics are essential. First, the texture of the casing by the application of the process must be given "permanent set", and in other claims relative to the laminated casing, the different plies must be "merged" together. It is pointed out in the defendant's brief that the "Defendant does not infringe on claims 2, 3, 4 and 13 of this patent because it does not impart permanent character to the intestines or permanently set them, as specified in these claims, and defendant does not infringe on claims 7, 8, 13 and 14 because it does not make a laminated casing in which the surfaces in contact are merged together."

I think defendant's contention in this respect amply supported by the evidence. The sum of the defendant's process is merely to cut the gut in suitable lengths—approximately 28 or 30 inches—pull the same over a round or otherwise shaped stick of the approximate diameter of the gut, put a rubber band over each end to hold the gut stationary on the stick, hang the stick up in a drying room, and let nature take its course. Nature in the instant case will dry out the moisture from the texture of the gut and slightly shrink those portions which hang loosely on the stick. After the lengths of the gut have hung in the drying room a suitable time they are taken out and an operator slits the guts down the sides and peels the layers off from the stick. The tissue is then flattened out on a table, trimmed by a straight-edge when necessary

and immersed in water, through which latter process the tissue "reverts to almost the identical thing that it was when started with." The last quotation is from the testimony of the witness Sotek, and his testimony on this point is not contradicted. It will, therefore, be observed that by merely hanging the length of gut and stick up to dry, does not give the texture a permanent set, and in the case of laminated casings, that is, where two lengths of gut are telescoped over a stick at the same time, the process does not merge the plies together, as they separate readily after coming off from the stick, and when slightly moistened may be sewed on machines without difficulty.

Consideration of the specifications of the patent when construing the claims makes it evident that merely drying on the stick is not the "curing", "tanning" or "treating" contemplated in the claims. Reference to the file wrapper (Defendant's Exhibit 1) clearly indicates this fact. The application as originally filed was rejected while containing original claim 3, as follows: "3. The process of producing an animal casing of predetermined definite form, which consists in taking an animal intestine of irregular diameter, stretching or expanding the smaller portions of said intestine, and in contracting or shrinking the larger portions of said intestine."

This claim was considered in the light of the then specifications which remained, by shrinking by applying a solution of alum, hydrochloric acid or other astringent, or by the application of hot air containing an astringent vapor. But this claim in the light of this specification and plaintiff's application was rejected by the Patent Office, and in order to obtain an allowance the applicant amended by inserting the following: "thereafter treating the casing to permanently fix the contracted and expanded portions". This seems to clearly indicate that a mere drying of the casing was neither sufficient to give the casing texture a permanent set or constitute an equivalent of "curing", "tanning", "treatment", or other chemical equivalent. I therefore conclude that infringement of none of the claims of this patent has been proven.

▮ We now recur to patent No. 1,837,- 280. As to that patent, as stated, the plaintiff relies upon claims 1, 5 and 8. Those claims are as follows:

"1. An animal casing comprising a plurality of tapered intestinal portions superimposed and secured together at their longitudinal edges in reverse tapered relation whereby to form a casing of substantially uniform expansibility and of uniform diameter."

"5. The process of producing relatively large animal casings from a plurality of relatively small tapered intestinal portions which consists in telescoping said intestinal portions in reverse tapered arrangement, and slitting and stitching together the longitudinally slit edges of said intestinal portions so that the taper of the one offsets that of the other, and a casing of relatively large diameter is produced."

"8. A process of producing relatively large animal casings from tapered intestinal portions, which consists in superimposing and securing said portions at their longitudinal edges in reverse tapered relationship, whereby the taper of the one intestinal portion will offset the taper of the other, and a relatively large casing of substantially uniform diameter and expansibility will be produced."

It will be noted that claim 1 is an article of manufacture claim, and analysis demonstrates that it rests squarely upon each of the other two claims. Claims 5 and 8, as I perceive them, differ only verbally. It is true that claim 8 in the concluding clause predicts the character of casing that will be produced by application of the process described, but this prediction is no part of the process but merely the opinion of the patentee. In claim 5 the first step is described as telescoping said intestinal portions in reverse tapered arrangement. In claim 8 the step is described as superimposing said portions in reverse tapered relationship. Claim 5 requires slitting and stitching together the longitudinally slit edges of said intestinal portions, whereas claim 8 requires securing said portions at their longitudinal edges. In claim 5 the stitching is to be in reverse tapered arrangement, whereas in claim 8 the securing of said portions is to be in reverse tapered relationship. The different verbal requirements are clearly equivalent.

The cardinal object of the invention was aptly stated by the plaintiff's counsel in the Patent Office. Examination of the file cover of this patent discloses counsel making the following statement: "The Examiner undoubtedly understands that the chief purpose of this invention is to utilize *without waste or with the least possible waste* naturally tapered casings which under all

processes heretofore employed have had to be *straightened up or cut down with very considerable waste* if put together to form larger casings or casings of maximum size and uniform diameter." (emphasis ours)

The undisputed evidence shows that the defendant does not secure or stitch the portions in reverse tapered arrangement or relationship; nor does defendant so stitch the portions that the taper of one portion will offset the taper of the other. The fact is that defendant slits the telescoped or superimposed guts while on the stick, peels them off in the same manner as when a single gut is drawn on the stick. The portions are then trimmed to straight edges and sewed together, thus avoiding any reverse tapered relationship and producing a straight seam instead of a spiral seam. The object of plaintiff's patent as stated by his counsel in the Patent Office as above quoted is entirely sacrificed. That is to say, defendant does not attempt "to utilize without waste or with the least possible waste naturally tapered casings".

It is perfectly clear that the only semblance of a claim in the record to an infringement of this patent is by assuming that the mere placing of the intestines on the sticks in telescoped and reverse arrangement is covered by this patent. Upon this point I quote from defendant's brief:

"If more is needed to show non-infringement, an examination of the file wrapper (Defendant's Exhibit 2) of this patent No. 1,837,280 will show that plaintiff is estopped from claiming that the mere placing of the intestines on the sticks in telescoped and reverse tapered arrangement is covered by the patent, and that the chief purpose of the patentee is to avoid trimming to remove the taper of the component, opposite wall pieces. Original claim 1 read as follows:

"1. 'An animal casing made of a plurality of tapered intestinal portions secured together in reverse tapered arrangement whereby the taper of one substantially offsets the taper of the other.'

"This claim was rejected under date of March 25, 1931 (file wrapper, p. 39) on the following grounds:

" 'Claims 1 and 26 are rejected as vague, indefinite, functional and incomplete. The structure recited in this claim does not define a sausage casing but merely stated that two tapered pieces of intestine are laid one on top of the other in reversed tapered relation and secured together.'

"These claims were thereupon amended by the attorney for Mumm by inserting the limitation 'at their longitudinal edges' before 'in reverse tapered relation'.

"Under the authorities quoted post p. 26, Mumm is estopped from obtaining as broad a construction of his patent as if this broad claim 1 had been granted, and the amendment requiring the securing of the tapered pieces together 'at their longitudinal edges in reverse tapered relation' is of vital importance. As the pieces of defendant's casing which are secured together *at their longitudinal edges* are neither tapered nor in reverse tapered relation to each other, there is no infringement.

"The same situation exists with reference to claim 8, which was originally claim 26. It was amended in order to secure its allowance by limiting it to securing the tapered intestinal portions together *at their longitudinal edges in reverse tapered relationship* (See file wrapper, p. 39 and the argument in support of these claims at pages 40, 42 and 43). Here and elsewhere throughout the file wrapper the chief, if not the only, purpose and advantage claimed for Mumm's improvement was the economy obtained by avoiding the trimming of the side edges of the tapered portions to make them straight. In Paper No. 3 the concluding argument in support of allowance of the claim is as follows:

" 'The Examiner undoubtedly understands that the chief purpose of this invention is to utilize *without waste or with the least possible waste* naturally tapered casings which under all processes heretofore employed have had to be *straightened up or cut down with very considerable waste* if put together to form larger casings or casings of maximum size and uniform diameter.' (emphasis ours)

"This argument was repeated in other amendments (See Paper No. 6, Amendment B, second paragraph of Remarks; Paper No. 9, Amendment C, second paragraph of remarks).

"Claim 5, the only other claim of this patent in suit, is even more clearly limited to slitting and stitching together the longitudinally *slit* edges so that the taper of one of the intestinal portions offsets that of the other. Estoppel against the present claim of infringement accordingly extends to claim 5 as well as claims 1 and 8.

"Mumm contended that where tapered intestines were used in the prior art it was necessary to trim the edges to secure a cas-

ing of uniform diameter. Such trimming constituted the 'waste' that he avoided by securing the longitudinal *untrimmed* edges together. From the foregoing it will be evident that estoppel against the claim of infringement arises from the facts:

"1. That the broad rejected claims 1 and 8 merely called for securing the intestines together in reverse tapered arrangement, as in defendant's procedure up to the point of the slitting and removal from the sticks. .

"2. That such broader claims were rejected because incomplete and not drawn to the finished casing.

"3. That Mumm accepted the rejection and amended the claims to limit them to securing the longitudinal edges of tapered portions together in reverse tapered relation, and

"4. That the defendant does not secure the longitudinal edges of tapered portions together in reverse tapered relation.

"Furthermore, defendant by trimming the edges removes the taper and eliminates the sole advantage claimed for the Mumm invention over the prior art."

This argument and these facts seem to me conclusive against the plaintiff's contention for infringement.

In view of my conclusions upon the matter of infringement, I shall not extend this opinion by again attempting an analysis of the various claims of the patents upon the question of their validity. The findings of fact and conclusions of law filed are sufficiently explanatory to indicate my course of reasoning. I here re-state my conclusions of law with appropriate references to findings:

IV. Claims numbered 3 and 5 of patent No. 1,484,523 are not shown to be invalid because of the prior art, unless construed so broadly as to include merely telescoping the intestines on wooden sticks and drying them, but if so construed would be invalid for lack of invention over the prior patents to Schwarz (German) No. 230,713 of May 1, 1910, and May patent No. 1,063,-713, of June 3, 1913 (Findings of Fact numbered II, III, IV, XXV and XXVII).

V. Claims numbered 2, 3 and 4 of patent No. 1,699,076 are invalid and void for lack of invention over patent No. 1,484,523 in suit (findings of fact numbered IX, XI, XII and XXXI).

VI. Claims numbered 2, 3 and 4 of patent No. 1,699,076 are invalid and void for lack of invention over Schwarz patent No. 230,-713, May patent No. 1,063,713, Hellerman patent No. 1,568,734, and the prior uses testified to by May, Lavery, Hellerman, Hawkins, Priscal, Reissner and Rech (findings of fact numbered IX, XI, XII and XXV to XXX, inclusive).

VII. Claims numbered 7, 8, 13 and 14 of patent No. 1,699,076 are invalid and void for lack of invention over patent in suit No. 1,484,523 when considered with May patent No. 1,063,714. These claims are also invalid and void for lack. of invention over the patents to May No. 1,063,713, Hellerman No. 1,568,734 and the prior uses described by May, Lavery, Hellerman, Hawkins, Priscal, Reissner and Rech (findings of fact numbered X, XI, XIII, XIV, XV and XXV to XXXI, inclusive).

[7] VIII. Claims numbered 1, 5 and 8 of patent No. 1,837,280 are invalid and void for lack of invention over the prior patent to May No. 1,063,714 and the commercial use of the process thereof described by Solomon May, and are also invalid and void over the prior use described by Hellerman (findings of fact numbered X to XIII, XXV, XXVIII and XXIX).

A decree will be entered dismissing the plaintiff's complaint for want of infringement as to all claims of the patents in suit, and because of the invalidity of patents No. 1,699,076, and No. 1,837,280.